IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| BLUE WATER SHIPPING US, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-CV-333-MJT |
| | § | |
| SAPURA USA HOLDINGS | § | |
| INCORPORATED, SAPURA ENERGY | § | |
| MEXICANA S.A.P.I. DE C.V., SAPURA | § | |
| ENERGY BERHAD, | § | |
| | § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge for consideration and disposition of Sapura USA Holdings Incorporated's Motion to Dismiss (doc. #4) and Plaintiff's Motion to Remand (doc. #7). (Doc. #22.) Pending before the court is Plaintiff's Motion to Remand. (Doc. #7.) After review, the undersigned recommends that the motion should be granted.

I.   **Procedural History and Plaintiff's Claims**

On June 23, 2022, Plaintiff's Original Petition was filed in state court in the 260th District Court of Orange County, Texas, alleging breach of contract and related quasi-contractual claims against Defendants Sapura USA Holdings Incorporated ("Sapura USA") and Sapura Energy Mexicana, S.A.P.I. de C.V. ("Sapura Mexicana"). (Doc. #2.) On October 31, 2022, Plaintiff filed an amended complaint adding Sapura Energy Berhad ("Sapura Berhad") as an additional Defendant. (Doc. #18.) Sapura Mexicana and Sapura Berhad, both foreign entities, have not yet

been served or otherwise appeared in this suit. The court received the case through Sapura USA's Notice of Removal filed on August 15, 2022. (Doc. #1.)

Plaintiff filed a Motion to Remand on September 9, 2022, asserting that the inclusion of Sapura USA, a Delaware corporation with a regular place of business in Texas, creates a lack of complete diversity. (Doc. #7.) Sapura USA responded on September 16, 2022 (doc. #14), claiming that Sapura USA was improperly joined as a defendant and should be dismissed from the suit. The undersigned held a hearing on the matter on January 10, 2023, and ordered additional briefing from the parties (doc. #29). Plaintiff submitted additional briefing on January 24, 2022 (doc. #31), and Defendant submitted additional briefing on January 31, 2022 (doc. #32). This matter is now ripe for review.

**II.     Legal Standard**

   A. Federal Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013); *see also, e.g.*, *Energy Mgmt. Servs. LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Only cases that "could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This court must presume that it does not have jurisdiction. *Kokkonen*, 511 U.S. at 377; *see also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

The party seeking removal bears the burden of demonstrating that removal is proper and federal jurisdiction exists. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). To remove a case to a federal district court based on diversity, the defendant must demonstrate that all the prerequisites of

diversity jurisdiction outlined in 28 U.S.C. § 1332 are satisfied. *Smallwood v. Ill Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). Under 28 U.S.C. § 1332, there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000, exclusive of interests and costs. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018). Further, this court must construe any ambiguities against removal and in favor of remand. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno*, 276 F.3d at 723).

      B. <u>Improper Joinder</u>

While complete diversity is required to establish diversity jurisdiction, such diversity cannot be destroyed by a plaintiff improperly[1] joining a non-diverse defendant. *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 243-46 (5th Cir. 2000)). Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McKee*, 358 F.3d at 333 (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).

Of the two ways to establish improper joinder, only the second way is before the court today. The removing party can carry its heavy burden on the second prong by showing "that there is *no possibility* of recovery by the plaintiff" against the non-diverse defendant. *Advanced Indicator & Mfg. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (emphasis added) (citing *Smallwood*, 385 F.3d at 573).

A court evaluates whether a plaintiff has a possibility of recovery against the in-state defendant by conducting "a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573. In doing so, the court may "pierce the pleadings" and consider summary judgment-type evidence in the

---

[1] The Fifth Circuit and courts within this circuit use the terms "improper joinder" and "fraudulent joinder" interchangeably. *Smallwood*, 385 F.3d at 571 n.1 ("[T]here is no substantive difference between the two terms.").

record, so long as it "takes into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *McKee*, 358 F.3d at 334. However, the court is not authorized to look "beyond jurisdiction and into a resolution of the merits." *Smallwood*, 358 F.3d at 573-74.

**III.   Discussion**

The central issue before the court is whether Sapura USA has shown that Plaintiff has no possibility of recovery against it.

The corporate structure of Sapura USA, Sapura Mexicana, and Sapura Berhad appears to be as follows: Sapura USA (incorporated in Delaware with an office in Texas) is a wholly owned subsidiary of Sapura Energy Berhad (a Malaysian entity) and is held through Sapura Australia (Holdings) Pty. Ltd. (incorporated in Australia); Sapura Mexicana (a Mexican entity) is a wholly owned subsidiary of Sapura Energy Berhad and is held through Sapura Offshore Sdn. Bhd (a Malaysian entity) and SapuraMex Pte. Ltd. (incorporated in Singapore). (Doc. #25.) Thus, Sapura USA and Sapura Mexicana are sister companies owned by the same parent company, Sapura Berhad.

   A.  <u>Liability as a Contractual Party and Promissory Estoppel</u>

For breach of contract claims, a plaintiff must show, *inter alia*, that a valid contract existed between the plaintiff and the defendant. *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 448 (Tex. App.—Houston 2016, pet. denied) (citations omitted). Significantly, neither Plaintiff nor Sapura USA has produced a full copy of the contract at issue here, having indicated at the January 10, 2023, hearing that no such contract for this transaction is available. Additionally, the parties indicated that other documents, such as performance bonds or power of attorney documents, which could help illustrate the nature of the relationship between Plaintiff and Sapura USA and were

requested by the undersigned's briefing order (doc. #29), are also unavailable (doc. #31 at ¶ 1). As such, the undersigned must rely on the documents the parties *have* submitted to the court in determining whether Plaintiff has a possibility of recovery against Sapura USA. These documents include invoices for the transaction, service orders for the transaction, email communications discussing and negotiating the transaction, and the "Purchase Order Standard Terms and Conditions for Supply of Goods and Provision of Services." (Docs. #7, 18 Ex. 1-4, 31 Ex. 1-8, 32 Ex. 1-8).

Sapura USA contends that it was improperly joined in this suit because it is not a party to Plaintiff's contract, thus it cannot be held liable for the alleged breach of contract, and Plaintiff has no possibility of recovery against it. (Doc. #32 at ¶ 4.) In support of its position, Sapura USA cites to the fact that the invoices (doc. #1 ex. 1 at 13-27) for the transaction identify Sapura Mexicana rather than Sapura USA as the shipper. (Doc. # 14 at ¶ 10.) Sapura USA also cites to parts of Plaintiff's additional briefing exhibits which list "Sapura Energy" and/or Sapura Mexicana, rather than Sapura USA specifically. (Doc. #32 at ¶¶ 4-6.)

Plaintiff argues that it entered into a contractual relationship with "Sapura Energy," thus the transaction involved *both* Sapura USA and Sapura Mexicana, since each entity was doing business as "Sapura Energy." (Doc. #31 at ¶ 2.) Additionally, Plaintiff cites to a number of documents showing that employees of Sapura USA, such as Travis Grove, Scott Humble, and Galen Cloud, were involved in the transaction in various ways, including written approval of and instructing Plaintiff regarding the work to be perfomed, facilitating the work Plaintiff performed, requesting invoices, and promising payment of Plaintiff's past-due invoices. (Docs. #7 at 7-40, 14 Ex. 1, 18 Ex. 1-4, 31 Ex. 1-8). Plaintiff argues these documents show that Sapura USA and Sapura Mexicana "worked interchangeably" throughout their relationship regarding the work and services

Plaintiff performed, as Sapura USA "negotiat[ed] pricing, assist[ed] with scheduling, and act[ed] as the primary point of contact between the parties, even going so far as to assure payment to Plaintiff when [Sapura Mexicana] failed to timely pay." (Doc. #7 at ¶ 8.) Additionally, many of the submitted exhibits bear the logo and name "Sapura Energy," including *both* documents from Sapura Mexicana (e.g., doc. #18 ex. 4 at 2) and Sapura USA (e.g., doc. #18 ex. 3 at 2), further suggesting that Sapura USA and Sapura Mexicana do business as "Sapura Energy," thus a contractual relationship with "Sapura Energy" could encompass both entities.

Sapura USA's main argument in opposition is that the name "Sapura USA" does not appear on any of these documents—rather, the documents only include the name "Sapura Energy." (Docs. # 14 at ¶¶ 3-7, 32 at ¶¶ 4-6.) For example, Sapura USA notes that "exhibit A" to Plaintiff's Motion to Remand contains email correspondence from Scott Humble and Galen Cloud (doc. #7 at 8-9). The email correspondence does not include the name "Sapura USA," which Sapura USA cites as evidence that Sapura USA was not involved in the transaction. However, the email signatures from Scott Humble and Galen Cloud plainly indicate that they are employees in the Houston office of "Sapura Energy" at 2100 West Loop South, Suite 1110, Houston, Texas 77027, which, significantly, *is the address of Sapura USA* (docs. #18 at ¶ 2.2, 19 at ¶ 3). Moreover, Sapura USA's counsel also stated at the hearing that these individuals are employed by Sapura USA. Thus, these emails support Plaintiff's contention that Sapura USA does business as "Sapura Energy." Furthermore, the content of these emails—which appears to be facilitating, instructing, and approving Plaintiff's contracted-for services—supports Plaintiff's allegation that Sapura USA was involved in the transaction alongside Sapura Mexicana.

Relatedly, Sapura USA also argues that the fact that Sapura Mexicana is listed on certain documents, such as Plaintiff's invoices, demonstrates that Sapura Mexicana is the only contractual

party. (Doc. #32 at ¶¶ 4-6.) This argument is not sufficient, however, when considered alongside other documents showing Sapura USA's involvement and the ambiguity caused by the two entities both doing business interchangeably as "Sapura Energy." Moreover, Plaintiff suggests that Sapura Mexicana is listed on the invoices simply because Sapura USA requested that Plaintiff do so (doc. #32 at ¶ 5), thus this is not necessarily evidence that Sapura Mexicana is the only contractual party. The undersigned additionally notes that the "Purchase Order Standard Terms and Conditions for Supply of Goods and Provision of Services" (doc. #31 ex. 1 at 10) [hereinafter "Terms and Conditions"] includes certain definitions[2] that may further indicate Plaintiff has a possibility of recovery against Sapura USA.

Finally, the undersigned notes that, although it is not addressed by the parties in the briefing, Plaintiff's Original Petition and Amended Complaint (docs. #2 at ¶ 5.7, 18 at ¶ 5.7) allege alternative liability based on promissory estoppel.[3] The elements of a promissory estoppel claim are: "(1) a promise; (2) foreseeability by the promisor; (3) actual substantial, and reasonable reliance by the promise to its detriment; and (4) injustice that can be avoided only by enforcement of the promise." *Ezennia v. Wells Fargo Bank, N.A.*, No. H-10-5004, 2012 WL 5499420, at *4 (S.D. Tex. Nov. 13, 2012) (citing *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005)). Plaintiff alleges each of these elements in the Original Petition and Amended Complaint (docs. #2 at ¶ 5.7, 18 at ¶ 5.7), and the documents and briefing before the court support these allegations.

---

[2] The Terms and Conditions includes the following relevant definitions: (1) "'Buyer' means the company as stated in the Purchase Order who procures the Goods and/or Services from Seller/Contractor;" (2) "'Buyer Group' means Buyer, Client, its and their Affiliates, directors, officers and employees;" and (3) "'Affiliate' means with respect to any Party . . . any other entity . . . that, directly, or indirectly through one or more intermediaries . . . is under common control with such Party."

[3] Plaintiff need not have necessarily addressed promissory estoppel in the briefing for the undersigned to consider it, since the court looks to the allegations contained within the complaint to determine whether there is a possibility of recovery against Sapura USA. *See Electro Grafix, Corp. v. Acadia Ins. Co.*, No. SA-18-CA-589-XR, 2018 WL 3865416, at * 3 (W.D. Tex. Aug. 14, 2018) (quoting *Smallwood*, 385 F.3d at 573).

Therefore, even if Sapura USA could demonstrate that Plaintiff has no possibility of recovery against it as a contractual party, Plaintiff still has a possibility of recovery against Sapura USA based on promissory estoppel for the reasons discussed above.

The undersigned thus finds that, taken together, the submitted documents and pleadings before the court demonstrate that Plaintiff has a possibility of recovery against Sapura USA as either a contractual party or based on promissory estoppel. The undersigned makes this finding guided by three principles. First, Sapura USA bears the burden of demonstrating improper joinder. *McKee*, 358 F.3d at 333-34. This is a heavy burden—unless it is *clear* that Sapura USA has been improperly joined, this suit should be remanded. *Id.* at 337. Second, in determining whether Sapura USA was improperly joined, the court "does 'not determine whether the plaintiff will actually, or even probably, prevail on the merits of the claim, but only looks for a possibility that the plaintiff might do so.'" *Veritas Consulting Grp., Inc. v. Gasbuddy Org., Inc.*, No. C-10-147, 2010 WL 2598386, at *2 (S.D. Tex. June 24, 2010) (quoting *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). Third, the undersigned must construe any ambiguities against removal and in favor of remand. *Mumfrey*, 719 F.3d at 397.

Here, the pleadings and documents before the court indicate support for Plaintiff's allegation that Sapura USA could be liable for this transaction either as a contractual party or based on promissory estoppel. While Sapura USA has submitted documents that may raise questions as to Sapura USA's ultimate liability on the merits, it has not carried is burden such that the undersigned can conclude that there is *no* possibility of recovery against Sapura USA. *See Brown v. Wood Group USA, Inc.*, No. 4:21-cv-04093, 2022 WL 3031000, at *4 (S.D. Tex. June 17, 2022) (finding that the defendant failed to show plaintiff had no possibility of recovery where the "parties' submissions evince[d] a genuine factual dispute" as to the defendant's potential for

liability on certain claims). Accordingly, the undersigned finds that this court lacks subject-matter jurisdiction to hear this suit due to a lack of complete diversity, and remand is proper.

B. Alter Ego Liability

Plaintiff also argues that Sapura USA, a sister company to Sapura Mexicana, may be liable, even if it were not a contractual party, under an "alter ego" theory of liability as provided by Section 21.223 of the Texas Business Organizations Code.[4] Under the alter ego theory, Sapura USA could be held liable for Sapura Mexicana's contractual obligations if Sapura USA "caused [Sapura Mexicana] to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of [Sapura USA]." TEX. BUS. ORGS. CODE § 21.223(b). In the context of improper joinder, Sapura USA must show there is no possibility Plaintiff can demonstrate (1) that Sapura USA is the alter ego of Sapura Mexicana, and (2) that the corporate fiction was used for an illegitimate purpose, *i.e.*, to perpetuate an actual fraud on Plaintiff for Sapura USA's direct personal benefit. *NSTI, LLC v. Def. Energy Ctr. of Excellence*, No. 4:19-CV-03854, 2020 WL 1321530, at *2 (S.D. Tex. Mar. 17, 2020) (citation omitted).

Here, Plaintiff alleges that Sapura USA and Sapura Mexicana are alter egos of each other, using the name "Sapura Energy" and conducting business with entities like Plaintiff interchangeably, for an illegitimate purpose.[5] (Doc. #31 at ¶ 10.) Plaintiff argued at the January

---

[4] The alter ego theory of liability is distinct from the "single business enterprise" theory, which the Texas Supreme Court has rejected as abrogated by statute. *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008) ("The single business enterprise liability theory is fundamentally inconsistent with the approach taken by the legislature in article 2.21."). Thus, "corporations cannot be held liable for each other's obligations merely because they are part of a single business enterprise." *Id.* at 447.

[5] Plaintiff also suggests in the additional briefing (doc. #32 at ¶ 10) that Sapura Mexicana is using Sapura USA to avoid registering with the Texas Secretary of State. However, this argument reverses the alter ego liability. To hold Sapura USA liable for Sapura Mexicana's actions, *Sapura USA* must be using *Sapura Mexicana* for an illegitimate purpose, whereas Plaintiff's registration theory posits that *Sapura Mexicana* is using *Sapura USA* for an illegitimate purpose. The undersigned makes no finding as to the validity of this argument as to Sapura Mexicana's liability for Sapura USA, since it is not a viable theory for the issue here regarding Sapura USA's liability.

9

10, 2023, hearing that the illegitimate purpose is, essentially, as follows: Sapura USA is using Sapura Mexicana, a sister corporation, to insulate itself from legal liability for breach of contract by requesting that Plaintiff list Sapura Mexicana as the shipper on Plaintiff's invoices so that Sapura USA can claim that it was never actually involved in the transaction, is not a party to the contract, and is otherwise not liable or responsible for payment on the contract—despite being (as Plaintiff alleges) intricately involved in and responsible for contracting and facilitating Plaintiff's shipping services.

Using a separate corporate entity to shield a responsible party from legal liability through dishonest tactics can constitute an "illegitimate purpose" or "fraud" for the purposes of alter ego liability. *See, e.g.*, *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489990, at *9 (W.D. Tex. Oct. 23, 2014) (citations omitted) (discussing various examples of using the corporate form to perpetuate a fraud and finding that the plaintiffs' allegation that the defendants used the corporate form to shield themselves from liability for their wrongdoing was sufficient on a motion to dismiss). Accordingly, the undersigned makes the additional finding that Sapura USA has not met its burden of showing that there is no possibility of recovery against it under the alter ego theory of liability. The undersigned again makes this finding in consideration of the three guiding principles discussed *supra* § III.A and concludes that the court lacks subject-matter jurisdiction on this basis as well.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion to Remand (doc. #7) be **GRANTED** and this case be **REMANDED** to the 260th District Court of Orange County, Texas. Accordingly, Sapura USA's pending Motion to Dismiss (doc. #4) should be **TERMINATED** as **MOOT**.

## V. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 7th day of February, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE